[No. G004636. Fourth Dist., Div. Three. Jan. 25, 1989.]

ROBERT O. DALE, Plaintiff and Appellant, v.
ITT LIFE INSURANCE CORPORATION, Defendant and
Respondent.

COUNSEL

John Guerin and Lewis James Runchey for Plaintiff and Appellant.

Adams, Duque & Hazeltine, James R. Willcox and James E. Curry for Defendant and Respondent.

OPINION

WALLIN, J.—Robert Dale appeals from an order of dismissal for failure to effect service of process or bring the action to trial within the relevant statutory periods. This appeal raises the question of whether entry of a default and default judgment against a party tolls the three-year period for service.

Our answer to this question is not new; we reach the same conclusion as did the court in *Ippolito* v. *Municipal Court* (1977) 67 Cal.App.3d 682 [136 Cal.Rptr. 795]. We publish this decision only to breathe new life into *Ippolito* which was disapproved by the Supreme Court in an opinion quickly repudiated by the Legislature.

I

On May 11, 1978, Dale filed a complaint against his former employer, ITT Life Insurance Company, and one of its general agents, John Naylor. On June 16, Dale attempted to serve the summons and complaint upon ITT by serving Naylor at his business address, despite the fact Naylor was not the corporation's designated agent for service of process. Naylor was fired by ITT eight days after he was served and he never informed ITT of the lawsuit.

On December 18, 1978, Dale filed a request to enter ITT's default. Again, Dale did not notify ITT but instead sent notice in care of Naylor at his previous address. The default was entered on January 8, 1979. Over two years later, on May 4, 1981, Dale obtained a default judgment against ITT in the amount of $100,000. ITT did not learn of the judgment until late 1983 when Dale attempted to levy against certain ITT assets held by the Bank of America. ITT unsuccessfully moved to set aside the judgment.

In January 1986 this court reversed the order denying ITT's motion and directed the trial court to set aside the default and vacate the default judgment. We found Dale's service of process on Naylor was not only *ineffective*

as to the corporation, but also an insincere attempt at service, not "reasonably calculated to give actual notice . . . ." (Code Civ. Proc., § 413.30.)

The remittitur issued in April 1986. Two months later ITT moved to dismiss the action for Dale's failure to serve the summons within three years of filing the complaint (Code Civ. Proc., § 583.210, subd. (a)) or bring the case to trial within five years (Code Civ. Proc., § 583.310).[1] The trial judge granted the motion and Dale appeals.[2]

## II

Once the statutory period for either service of process or commencement of trial has run, the action cannot be further prosecuted and must be dismissed. (§ 583.250; § 583.360.) ▪ A plaintiff can escape this harsh consequence only by proving that grounds exist to toll the statutory period. (*Paul* v. *Drost* (1986) 186 Cal.App.3d 1407, 1411 [231 Cal.Rptr. 361].) Such proof is strictly limited: The requirements of both dismissal statutes "are not subject to extension, excuse, or exception *except as expressly provided by statute.*" (§ 583.250, subd. (b); § 583.360, subd. (b), italics added.) ▪ The critical inquiry here, then, is whether any statutory exclusions applied to toll both the three and five-year periods and bar mandatory dismissal.

Section 583.340 governs the computation of the five-year period in which a case must be brought to trial. That statute stops the five-year clock whenever any one of three conditions exist. One of these, a catch-all exclusion for time during which it was "impossible, impracticable, or futile" to bring the action to trial (§ 583.340, subd. (c)), served to toll the statutory period here.[3]

In *Maguire* v. *Collier* (1975) 49 Cal.App.3d 309 [122 Cal.Rptr. 510] the court recognized the impracticability of bringing a case to trial when the defendant is already in default. (*Id.,* at p. 313.) *Maguire* held the period

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] Curiously, Dale attempts in this appeal to challenge our prior decision ordering the default and default judgment be set aside. He argues that decision was void because it granted unrequested relief, claiming ITT mistakenly asked only that the default judgment be vacated, not the default itself. (See *Cumberpatch* v. *Nolan* (1954) 125 Cal.App.2d 205 [270 P.2d 540].) But Dale failed to raise this issue in his petition for rehearing before this court or in his petition for hearing before the California Supreme Court, both of which were denied. Our decision is final and is not subject to renewed attack here. (See *Selby Constructors* v. *McCarthy* (1979) 91 Cal.App.3d 517, 522 [154 Cal.Rptr. 164].)

[3] Another exclusion contained in section 583.340 also applied: The trial court's jurisdiction over the case was suspended during the course of the first appeal. (§ 583.340, subd. (a); *Bergin* v. *Portman* (1983) 141 Cal.App.3d 23, 25-26 [190 Cal.Rptr. 81]; *Guy F. Atkinson Co.* v. *State of California* (1971) 17 Cal.App.3d 1065, 1068 [95 Cal.Rptr. 543].)

during which a party is in default, "as well as the period during which a default judgment is in effect," is excluded from computation of the five-year period. (*Ibid.*)

ITT's default was entered January 8, 1979, about eight months after commencement of the action. The five-year period was tolled from that date until the remittitur issued on April 7, 1986, following ITT's successful appeal of the order denying the motion to set aside the default and default judgment. When ITT moved to dismiss the action two months later, over four years remained to bring the action to trial. Thus the five-year rule provided no basis for dismissal of the action.

### III

Dale's failure to serve the summons and complaint within three years of filing the action is not so easily absolved, nor so harmless. Section 583.240 sets forth the four conditions which will cause a tolling of the three-year period for service of process as follows: "(a) The defendant was not amenable to the process of the court. [¶] (b) The prosecution of the action or proceedings in the action was stayed and the stay affected service. [¶] (c) The validity of service was the subject of litigation by the parties. [¶] (d) Service, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control. Failure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision."

The first two exclusions are clearly inapplicable. There is no claim ITT was ever not amenable to service of process, or that the action was stayed. Significantly, section 583.240 does not contain an exclusion for the time during which the court's jurisdiction over the action is suspended (for example, while the case is on appeal), as does section 583.340, governing the five-year period.

Nor does Dale gain any benefit from the exclusion for time during which the validity of service is being litigated. ITT filed its motion to set aside the default judgment for lack of service on December 5, 1983—five and one-half years after commencement of the action. ▇▇ ▇▇▇ ▇▇ ▇▇ A statutory period cannot be tolled two and one-half years after it has already run.[4]

---

[4] Likewise, Dale's argument that ITT made a general appearance in seeking to set aside the default and default judgment is of no avail. A general appearance after the period for service has run does not give the court jurisdiction over the defendant. (See *Busching* v. *Superior Court* (1974) 12 Cal.3d 44, 52-53 [115 Cal.Rptr. 241, 524 P.2d 369]; *Mannesmann DeMag, Ltd.* v. *Superior Court* (1985) 172 Cal.App.3d 1118, 1125 [218 Cal.Rptr. 632]; *Ippolito* v.

The only possible exception to the rule of mandatory dismissal here is that for time when service is impracticable, impossible or futile. In *Maguire* v. *Collier, supra,* 49 Cal.App.3d 309 the court held entry of a defendant's default per se tolls the five-year period because of the impracticability of bringing such a defendant to trial. But does entry of a default make *service* against that defendant impracticable as well?

This is precisely the question considered by the court in *Ippolito* v. *Municipal Court, supra,* 67 Cal.App.3d 682. In that case plaintiff hired a process server who filed a false return of service after failing to locate defendant. Plaintiff obtained a default judgment against defendant and waited four and one-half years before attempting to execute on it by garnishing defendant's wages. Only then learning of the judgment, defendant moved to vacate the default and default judgment or, in the alternative, to discharge the judgment of record. He also moved to quash the service and dismiss the action for failure to serve and return the summons within three years.

The trial court vacated the default and default judgment but ruled the three-year period was tolled while the default had been in effect. The Court of Appeal reversed and ordered the trial court to dismiss the action, holding the statutory period for service was not tolled while the default and default judgment were in effect.

In reaching this result, the *Ippolito* court refused to transplant the *Maguire* tolling rule into the context of dismissal for failure to serve. This refusal was based on a recognition of the differing policies behind the three and five-year dismissal statutes, former sections 581a and 583, respectively.[5]

The court described the "significant distinctions" in the policies underlying the two dismissal statutes as follows.: "Section 581a concerns itself with the detriment accruing to a *defendant* insofar as his ability to institute discovery, preserve evidence and locate witnesses is concerned, when he is not given *timely notice* of the institution of an action. [Citation.] Section 583 focuses upon the detriment to the *judicial system* as well as to a defendant attendant upon the tardy litigation of a claim. *We therefore cannot apply with rubberstamp symmetry decisional criteria interpreting section 583 and*

---

*Municipal Court, supra,* 67 Cal.App.3d 682, 688, disapproved of on other grounds in *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 722, fn. 5 [170 Cal.Rptr. 790, 621 P.2d 829].)

[5] *Ippolito*'s discussion of these repealed statutes applies with equal force to their contemporary counterparts, operative in the present case, which continue the substance of the former statutes and codify their exceptions (impossibility, impracticability, and futility) long implied in case law. Sections 581a and 583 were repealed in 1984 (Stats. 1984, ch. 1705, §§ 3, 4). Section 581a was replaced with sections 583.210 through 583.250, and section 583 was replaced with sections 583.310 through 583.360 (Stats. 1984, ch. 1705, § 5).

*the implied exceptions thereunder to section 581a." (Ippolito* v. *Municipal Court, supra,* 67 Cal.App.3d at p. 687, partial italics added.)

Rather than simply adopting *Maguire*'s conclusion that the existence of a default and default judgment make statutory compliance impracticable, the court examined the unique facts of the case before it to determine whether plaintiff could fairly claim the benefit of the impracticability exception. Concluding this criterion comes into play only when circumstances *beyond a party's control* preclude statutory compliance, the court found the exception inapplicable in the context of serving a defendant in default. The court reasoned the distinction was that the " 'impracticability' in serving [defendant] was of [plaintiff's] own *creation.*" (67 Cal.App.3d at p. 687.)

Observing plaintiff hired the process server and was necessarily charged with notice of his agent's acts, the court held plaintiff cannot, "vis-à-vis an innocent adversary," rely on a false return of service "nor can he extend the time for actual service of process during the period in which his adversary is deemed to be in default." (67 Cal.App.3d at p. 688.) The court also noted plaintiff's lack of diligence in waiting over four years before attempting to satisfy the judgment was a further contributing factor in making actual service " 'impracticable.' " (*Ibid.*) Because both that delay and the malfeasance of the process server were circumstances within plaintiff's control, the claimed impracticability was not such to justify tolling of the period for service.

Four years after *Ippolito,* the California Supreme Court issued its seminal opinion, *Hocharian* v. *Superior Court, supra,* 28 Cal.3d 714. That case held proof of a plaintiff's "reasonable diligence" in attempting to effect service of process would excuse failure to comply with the three-year rule for service under section 581a. (*Id.,* at p. 722.) In effect, our high court recognized reasonable diligence as a separate exception to the rule of mandatory dismissal for lack of service. Moreover, the court expressly disapproved of *Ippolito* and other cases which held the implied exceptions, such as impracticability, had to arise from circumstances beyond a party's control. (*Id.,* at p. 722, fn. 5.)

*Hocharian* was not long for this world. In 1982 the Legislature amended section 581a to add subdivision (f), codifying the statute's pre-*Hocharian* implied exceptions, and "conspicuously" omitting the reasonable diligence criterion.[6] (See *Barrington* v. *A.H. Robins Co.* (1985) 39 Cal.3d 146, 156

---

[6] As amended in 1982, section 581a, subdivision (f) stated: "Except as provided in this section, the provisions of this section are mandatory and are not excusable, and the times within which acts are to be done are jurisdictional. Compliance may be excused only for either of the following reasons: (1) Where the defendant or cross-defendant is estopped to complain. (2)

[216 Cal.Rptr. 405, 702 P.2d 563]; *Republic Corp.* v. *Superior Court* (1984) 160 Cal.App.3d 1253, 1256 [207 Cal.Rptr. 241].) Significantly, the Legislature, in both its post-*Hocharian* amendment to section 581a and its more recent enactment of section 583.240, adopted *Ippolito*'s language that any claimed impossibility, impracticability or futility of service must be "due to causes beyond the plaintiff's control." (§ 583.240, subd. (d).) Moreover, the Law Revision Commission Comment to section 583.240 echoes the *Ippolito* rationale for such a limitation: "The excuse of impossibility, impracticability, or futility should be strictly construed in light of the need *to give a defendant adequate notice of the action* so that the defendant can take necessary steps to preserve evidence. Contrast Section 583.340 and Comment thereto (liberal construction of excuse for failure to bring to trial within a prescribed time). This difference in treatment is consistent with one aspect of the policy announced in Section 583.130—plaintiff must exercise diligence—and recognizes that *service, unlike bringing to trial, is ordinarily within the control of the plaintiff.* [17 Cal. Law Revision Comm. Rep. (1984) p. 905.]" (Italics added.)[7]

With the Legislature's simultaneous repudiation of *Hocharian* and adoption of *Ippolito*'s limitation on circumstances that toll the statutory period for service, we believe the holding of *Ippolito* has renewed vitality. Following *Ippolito*'s lead, we conclude entry of the default and default judgment against ITT tolled the dismissal period only if the claimed impracticability of service was due to causes beyond Dale's control. The facts indicate it was not.

Dale, like the plaintiff in *Ippolito,* must bear responsibility for his agent's failure to effect service of process. While Dale's lawyer may not have filed an intentionally false return of service, as did the process server in *Ippolito,* he did deliberately avoid giving ITT actual notice of the lawsuit.[8] Moreover, once ITT's default was entered, Dale engaged in considerable delay before either securing a default judgment or attempting to obtain satisfaction of that judgment. ▮▮▮▮ ▮ If Dale had exercised reasonable

---

Where it would be impossible, impracticable, or futile to comply *due to causes beyond a party's control*. However, failure to discover relevant facts or evidence shall not excuse compliance." (Italics added.)

[7] Underscoring this intended difference in treatment of the impracticability excuse—strict construction under section 583.240, liberal construction under section 583.340—is the fact the latter statute does *not* limit use of the excuse to circumstances beyond the plaintiff's control. (See also *Valerio* v. *Boise Cascade Corp.* (1986) 177 Cal.App.3d 1212, 1220 [223 Cal.Rptr. 592].)

[8] In our prior decision in this case, we noted Dale's attorney had litigated two earlier lawsuits against ITT, arising from similar facts but involving different plaintiffs. When Dale's attorney was asked at oral argument why he did not telephone ITT's counsel on the prior lawsuits when ITT failed to answer the instant complaint, he replied, "Because I didn't want them to respond."

diligence in prosecuting his case, the invalidity of service on ITT could have been discovered before the statutory period had run.[9] (This, of course, gives Dale the benefit of the doubt as to whether the improper service on ITT was deliberate misfeasance or merely negligence.) Because the circumstances making service impracticable were entirely within Dale's control, there were no grounds for tolling the statutory period pursuant to section 583.240.

As the court aptly stated in *Ippolito*: "Common sense and fairplay [*sic*] dictate that a plaintiff should not be able to hide behind the default obtained by a false return of service; [and] ultimately force a defendant, long without notice, to litigate a stale claim." (*Ippolito* v. *Municipal Court, supra,* 67 Cal.App.3d at p. 688.)

Judgment affirmed.

Sonenshine, Acting P. J., and Crosby, J., concurred.

A petition for a rehearing was denied February 16, 1989, and appellant's petition for review by the Supreme Court was denied April 4, 1989.

---

[9] Despite the demise of *Hocharian,* " 'reasonable diligence' " remains a useful "guideline" for evaluating whether compliance with statutory time limits was "impossible, impracticable or futile." (*Moran* v. *Superior Court* (1983) 35 Cal.3d 229, 238 [197 Cal.Rptr. 546, 673 P.2d 216]; see also *Westinghouse Electric Corp.* v. *Superior Court* (1983) 143 Cal.App.3d 95, 105 [191 Cal.Rptr. 549].)